## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *ex rel.* [UNDER SEAL], <br><br>                     Plaintiff, <br>     v. <br><br> [UNDER SEAL], <br><br>               Defendants. | Civil Action No. 4:23-cv-00402 <br><br> Hon. Stephanie Rose <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL <br> UNDER 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH, <br><br> Plaintiff-Relator, <br><br> v. <br><br> COMPETITIVE EDGE INC. and DAVID M. GREENSPON, <br><br> Defendants. | Civil Action No. <u>4-23-cv-00402</u> <br><br> Hon. <u>Stephanie Rose</u> <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Competitive Edge Inc. ("CEI") (the "Corporate Defendant") and David M. Greenspon ("Greenspon") (the "Individual Defendant") (collectively, "Defendants"), and alleges as follows:

### INTRODUCTION

1.      This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

SHN\719112.2

## SUMMARY OF ALLEGATIONS

3.      Defendant Greenspon is, and at all times relevant to this Complaint was, the Owner, President, Secretary, Treasurer, and Director of Defendant CEI.

4.      CEI is an Iowa-based corporation specializing in promotional products.

5.      Upon information and belief, Greenspon at all times relevant to this Complaint had a 20% or greater equity interest in CEI.

6.      In or about 2019, Greenspon was charged with a felony, specifically assault with intent to inflict serious injury.

7.      In or about 2020, Greenspon pled guilty to an aggravated misdemeanor charge.

8.      In or about 2020, Greenspon received a suspended prison sentence of two years.

9.      In or about April 2020, while Greenspon was still subject to criminal charges, CEI submitted a Small Business Administration ("SBA") application for a PPP loan.

10.     In or about April 2020, CEI obtained its first PPP loan.

11.     By in or about March 2021, CEI sought and obtained forgiveness for the first PPP loan.

12.     In or about April 2021, while Greenspon was still serving his sentence, CEI submitted a second SBA application for a PPP loan.

13.     In or before April 2021, CEI obtained its second PPP loan.

14.     By in or about June 2022, CEI sought and obtained forgiveness for the second PPP loan.

15.     Upon information and belief, Greenspon prepared and executed the loan applications as CEI's authorized representative, or caused another person to prepare and execute them as CEI's authorized representative.

SHN\719112.2

16.    In the applications, Defendants falsely stated and certified that no owner of CEI with an equity interest of more than 20 percent had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole." They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

17.    In reliance on these false statements and certifications, a lender extended PPP loans to CEI, totaling nearly $1.1 million.

18.    In further reliance on Defendants' false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States approximately $1.1 million.

19.    Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed and forgiven monies that were provided to Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

20.    This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

21.    In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District, and

3

because the PPP Loan application was prepared in, executed in, and/or submitted to the SBA from this District.

22.    Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

23.    In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

24.    Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Richard D. Westphal, United States Attorney for the Southern District of Iowa, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

25.    Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

**PARTIES**

26.    Plaintiff/Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

27.    Defendant Competitive Edge Inc. is a privately held company that was incorporated in the State of Iowa on or about December 6, 1984. Its principal place of business is located at 3500 109th Street, Urbandale, IA 50322.

SHN\719112.2

28.   CEI designs and manufactures promotional products. It provides companies and organizations with innovative products "125% Guaranteed" low prices, knowledgeable customer service, and "Fast" efficient delivery.

29.   CEI advertises that instead of just distributing its product, it also manufactures the majority of what it sells while maintaining factory prices. It offers convention give-a-ways, business gifts, direct mail campaign items, fund raising, political campaigns, special events, and company promotions.

30.   In the height of the coronavirus pandemic, CEI was awarded contracts from the State of Iowa worth $8.5 million to supply millions of masks, gowns, and goggles.

31.   Defendant David M. Greenspon resides at 5730 Red Bud Way, West Des Moines, IA 50266. He is currently the Owner, President, Secretary, Treasurer, and Director of CEI, and has been since 1983.

32.   Upon information and belief, Greenspon has and/or at all times relevant to this Complaint had, at least a 20% equity ownership interest in CEI.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

33.   Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

34.   The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a

5

false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G).  Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim plus three times the amount of the damages sustained by the Government, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Jan. 30, 2023).

35.     The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  The statute provides that "no proof of specific intent to defraud" is required.  31 U.S.C. § 3729(b)(1)(B).

36.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

6

37.    The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery.  The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

38.    In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

39.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

40.    Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses.  This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP.  In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

41.     Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

42.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

43.     The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

44.     In the original version of the PPP loan application (SBA Form 2483, effective April 2, 2020), Question 5 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole."

45.     The application stated that if Question 5 were answered "Yes," the loan would not be approved.

46.     The application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all

8

supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

47.     PPP loan applications were processed by participating financial institutions, which served as the lenders.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.  SBA paid processing fees to lenders.

48.     Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application.  If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

49.     A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

**THIS SPACE INTENTIONALLY LEFT BLANK**

## SPECIFIC FRAUD ALLEGATIONS

### Greenspon is Charged with Assault With Intent to Inflict Serious Injury and Pleads Guilty to an Aggravated Misdemeanor Charge

50.    On or about December 9, 2019, Greenspon was charged with a felony, specifically assault with intent to inflict serious injury, in Polk County, IA. *See* Case No. 05771 FE-CR-334007.

51.    On or about June 23, 2020, Greenspon pled guilty to an aggravated misdemeanor charge.

52.    On or about July 8, 2020, Greenspon received a suspended prison sentence of two years.

53.    Judge Michael Huppert rejected Greenspon's request for a deferred judgment, finding that he expressed no remorse for assaulting a woman in his home.

### CEI Applies for and Receives its First PPP Loan, which is Later Forgiven

54.    In or about April 2020, Greenspon prepared or caused to be prepared an SBA application for a PPP loan (using the original SBA Form 2483, effective April 2, 2020) on behalf of CEI to Legacy Bank ("LB"), a federally insured financial institution based in Altoona, IA.

55.    Question 5 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole." The application stated that if this question were answered "Yes," the loan would not be approved.

56.    The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting

10

documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

57.    Upon information and belief, Greenspon executed CEI's PPP loan application as the company's authorized representative, or caused another person to execute the application as the authorized representative.

58.    Upon information and belief, Greenspon falsely answered or caused to be answered "No" to Question 5 in the loan application, and initialed or caused to be initialed Question 5 to confirm this false response.

59.    Upon information and belief, Greenspon falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

60.    In or about April 2020, Greenspon submitted or caused to be submitted CEI's PPP loan application to LB.

61.    On or about April 6, 2020, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, LB issued PPP Loan #5889687006 to CEI in the amount of $564,834.76 (the "006 Loan").

62.    On or about March 5, 2021, the 006 Loan was forgiven in full, causing the United States to reimburse LB for the full amount plus interest, costs, and fees.

11

**CEI Applies for and Receives its Second PPP Loan, which is Later Forgiven**

63.    In or about April 2021, Greenspon prepared or caused to be prepared an SBA application for a PPP loan (using the SBA Form 2483 Version 10, effective March 18, 2021) on behalf of CEI to LB.

64.    Only borrowers who had been eligible to receive First Draw PPP Loans were eligible to receive Second Draw PPP Loans. Upon information and belief, Greenspon falsely answered or caused to be answered "No" to Question 5 in Defendants' first loan application, and falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

65.    The SBA Form 2483 Version 10 required the authorized representative to certify that "[t]he applicant [wa]s eligible to receive a loan under the rules in effect at the time this application [wa]s submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules)."

66.    The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

12

SHN\719112.2

67.     Upon information and belief, Greenspon executed CEI's PPP loan application as the company's authorized representative, or caused another person to execute the application as the authorized representative.

68.     Upon information and belief, Greenspon certified or caused to be certified that Defendants were eligible to receive a second loan in the loan application.

69.     Upon information and belief, Greenspon falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

70.     In or about April 2021, Greenspon submitted or caused to be submitted CEI's PPP loan application to LB.

71.     On or about April 21, 2021, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, LB issued PPP Loan #7134378810 to CEI in the amount of $526,735.85 (the "810 Loan").

72.     On or about June 23, 2022, the 810 Loan was forgiven in full, causing the United States to reimburse LB for the full amount plus interest, costs, and fees.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

73.     Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $1.1 million.

13

## CLAIMS FOR RELIEF

## COUNT I

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)

74.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

75.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

76.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

77.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – i.e., the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act: Conspiracy
31 U.S.C. § 3729(a)(1)(C)

78.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

14

SHN\719112.2

79.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.     That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Jan. 30, 2023), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.     That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.     That Relator be granted such other and further relief as the Court deems just and proper.

15

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.


DATE:   October 10, 2023

**SCHULTHEIS WHITE, PLC**

Mark A. Schultheis, Esq.
Patrick B. White, Esq.
3116 Ingersoll Avenue
Suite D
Des Moines, IA 50312
Tel.: (515) 528-2348
mas@swlawiowa.com
pwhite@swlawiowa.com


**SPIRO HARRISON & NELSON**

Eric H. Jaso (pro hac vice admission pending)
363 Bloomfield Avenue
Second Floor
Montclair, NJ 07074
(973) 232-0881
ejaso@spiroharrison.com

*Attorneys for Relator*

16